THE STATE OF KANSAS V. JOHN W. AND N. R. SIMMONS.

CRIMINAL PROSECUTION — *Illegal Arrest; No Jurisdiction.* In a criminal prosecution where the court has jurisdiction of the defendant only by means of the service of process in this state procured by the illegal arrest of the defendant in another state, *held,* that the court has no such jurisdiction as will properly authorize it to render judgment in the case against the defendant.

*Appeal from Lincoln District Court.*

THE opinion states the case. From a judgment against them on February 10, 1888, the defendants, *John W.* and *N. R. Simmons,* appeal.

*David Ritchie,* and *W. M. Smith,* for appellants.

*S. B. Bradford,* attorney general, for The State.

The opinion of the court was delivered by

VALENTINE, J.: This is an appeal by John W. Simmons and N. R. Simmons from a judgment of the district court of Lincoln county rendered against them, fining each of them $50, and imposing all the costs upon them, and ordering them to be committed to the county jail of the county until such fines and costs be paid. We shall consider only one of the points made by counsel for the appellants, and that is whether the court below had such rightful jurisdiction of the persons of the defendants that it could properly render a judgment of any kind against them. The facts, briefly stated, are as follows: The defendants were subpenaed as witnesses by the prosecution in the case of *The State of Kansas v. C. E. De Forest,* who was charged with a violation of the prohibitory liquor law. They left the state of Kansas and went to Odell, Gage county, Nebraska, and there engaged in business. Afterward, when the case of *The State v. De Forest* was called for trial, and when it was found that the defendants were not present as witnesses, an attachment was issued by order of the court for their arrest, and to require them to answer as for a

contempt.    This attachment was placed in the hands of H. B. Vennum, the sheriff of said Lincoln county, who took with him an assistant, James H. Good, and went to Odell, Nebraska, arriving there after midnight on or about November 14, 1887.    He and his assistant, who were well armed, first went to the house where John W. Simmons was sleeping, and arrested him while in bed, and placed him in irons.    They next went to the house where N. R. Simmons was sleeping, and arrested him while in bed, and placed him in irons.    Vennum, at the time, was not only well armed, but he had his pistols ready so as to use them in case of any resistance being offered. When the defendants found that resistance was useless, they agreed to go to Lincoln county, Kansas, with Vennum.    He then took them to that county, and placed them in the county jail a part of the time.    Afterward they were released from custody on bail.    Afterward, and on February 9, 1888, the county attorney of Lincoln county filed a criminal information against them, charging them with committing a contempt of the court in failing and refusing to obey the aforesaid subpena.    On that same day, February 9, the defendants applied to the court for a writ of *habeas corpus;* claiming, upon the facts aforesaid, that they were illegally restrained of their liberty, and that the court and its officers had no jurisdiction to imprison them on the aforesaid arrest and charge of contempt.    A hearing was had upon this application, and the court refused to discharge them, and refused to allow any writ of *habeas corpus.*    On February 10, 1888, the defendants moved to quash the aforesaid criminal information, which motion the court overruled.    The court then ordered them to stand up, and it then informed them of the aforesaid contempt proceedings, and the defendants said that they had nothing further to say.    The county attorney then asked that all the testimony offered in the *habeas corpus* case be considered in evidence in this contempt proceeding, and the court answered: "Yes, and all *proceedings* in said *habeas corpus* case."    The court then sentenced the defendants as aforesaid, and immediately afterward and on the same day the defend-

ants moved for a new trial upon various grounds, among which was that the court had no jurisdiction. This motion was immediately heard upon the papers in the case, and upon other evidence then introduced by the defendants, and was overruled by the court.

Several questions have been presented in this court, but we think the only one necessary to be considered is, whether the *court below had proper jurisdiction to hear and determine the case. We think this question must be answered in the negative. The evidence introduced in the *habeas corpus* case, and considered by the court in this case, and also the evidence introduced on the motion for the new trial, shows that the court below had no proper jurisdiction of the persons of the defendants. They were illegally arrested in Nebraska, upon no warrant or authority except the aforesaid attachment issued by the district court of Lincoln county, Kansas, and that was, of course, wholly insufficient. Writs and processes from the courts of one state can have no force beyond the territorial boundaries of that state, and no force within the territorial boundaries of any other state. And to unlawfully arrest a man in one state with the intention of taking him to another state, is of itself a crime. (Comp. Laws of Kansas of 1885, ch. 31, § 45; Comp. Statutes of Nebraska of 1881, p. 665, § 18.) Even in civil cases, it has been held by the supreme court of this state as follows:

"Where a person by fraud and deceit inveigles another into the jurisdiction of the court for the purpose of suing him, and of obtaining service of summons upon him in that jurisdiction, the summons and the service thereof should be set aside. Such an abuse of judicial process cannot be tolerated in any court of justice." (*Van Horn v. Great Western Mfg. Co.*, 37 Kas. 523, 526; same case, 15 Pac. Rep. 562.)

(See also the several cases referred to in the *Van Horn case* just cited, and also *The State v. Vanderpool*, 39 Ohio St. 273; *Compton v. Wilder*, 40 id. 130.)

It would not be proper for the courts of this state to favor, or even to tolerate, breaches of the peace committed by their own officers in a sister state, by sustaining a service of judicial

*Criminal case— no jurisdiction.*

process procured only by such a breach of the peace.   Indeed, it would not be proper for any court in any state to sustain a service of any judicial process, either civil or criminal, where the service of such process was obtained only by the infraction of some law, or in violation of some well-recognized rule of honesty or fair dealing, as by force or fraud.   Such a service would not only be a special wrong against the individual upon whom the service was made, but it would also be a general wrong against society itself—a violation of those fundamental principles of mutual trust and confidence which lie at the very foundation of all organized society, and which are necessary in the very nature of things to hold society together.

The judgment of the court below will be reversed, and the cause remanded, with the order that the defendants be discharged.

All the Justices concurring.