878 So.2d 84 (2003)
Christopher ROY, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2002-KA-01658-COA.
Court of Appeals of Mississippi.
August 19, 2003.
Rehearing Denied March 23, 2004.
Certiorari Denied July 22, 2004.
*85 Daphne L. Pattison, for appellant.
Office of the Attorney General by Deirdre McCrory, for appellee.
Before SOUTHWICK, P.J., THOMAS and IRVING, JJ.
*86 SOUTHWICK, P.J., for the court.
¶ 1. Christopher Roy was convicted of murder after a jury trial in Jackson County. On appeal, Roy alleges error by the lower court in denying his post-trial motions, in admitting certain photographs into evidence, in excluding one of Roy's offered jury instructions, and in failing to rule on Roy's motion to dismiss counsel, whom Roy deems ineffective. We find no error and affirm.

STATEMENT OF FACTS
¶ 2. The record presents two versions of the events of September 1999 that led to Roy's prosecution. Both involve the same three principal participants: the defendant Christopher Roy; the victim Dong (or "Tommy") Nguyen; and Jonathan May. The three were entangled in an illegal drug ring, with Nguyen supplying illicit drugs to May and Roy as dealers.
¶ 3. The State's theory, based in large part on May's testimony, held that Roy and May were each indebted to Nguyen for drugs that he had supplied. The two arranged to kill Nguyen, thus cancelling their debts. In preparation for the murder, May and Roy found an isolated trail fifteen miles outside Ocean Springs and dug a shallow grave. May then contacted Nguyen to set up a drug transaction for approximately $4,000 worth of cocaine. Nguyen met May at a local country store, then was lured back to May's house. When the two arrived, Roy was lying in wait behind May's shed. Roy attacked Nguyen, choked him, and then placed a plastic bag over his head. Nguyen subsequently died of asphyxia due to strangulation. The conspirators placed Nguyen's body in the back of Roy's truck and drove to the prepared grave. Nguyen was buried and his car was run into the nearby Pascagoula River. Approximately four months later, May turned himself in to police, disclosing the facts of the crime and leading authorities to Nguyen's body.
¶ 4. According to Roy's account, his drug debts led to a deteriorating relationship with Nguyen. On the evening in question, Roy and May were working on an old car at May's house. Nguyen arrived and began threatening Roy. Roy became afraid, because Nguyen had told others that "he had a bullet with my name on it." The two began to fight. Roy grabbed Nguyen by the neck, later putting him in a headlock. Roy testified that he thought he had merely "knocked him out" and that Nguyen's death was unintended. Roy panicked, agreeing with May that authorities must not find out about the fight. The two agreed to hide the body and the car. Roy explained that he covered Nguyen's face with the plastic bag because he felt bad about what had happened. They then drove to the isolated trail and buried Nguyen's body.
¶ 5. The jury chose the State's version and found guilt. Roy's sentence was to serve the remainder of his life in prison. His appeal has been deflected here.

DISCUSSION

1. Evidentiary weight and sufficiency
¶ 6. Roy challenges the denial of his motions for directed verdict and new trial. These motions separately challenge the sufficiency and weight of the evidence.
¶ 7. The issue of evidentiary sufficiency undergoes this analysis: 1) the evidence considered is the entirety of what was admitted; 2) the perspective is one that gives the benefit of all reasonable inferences to the verdict; and 3) the conclusion must be that reasonable jurors could have found guilt beyond a reasonable doubt. Smith v. State, 802 So.2d 82, 85 (Miss.2001).
*87 ¶ 8. Roy admits to the killing. Particularly significant among the remaining evidence was May's testimony of the conspirators' premeditated design. Even uncorroborated, an accomplice's testimony may be sufficient evidence to sustain conviction. Finley v. State, 725 So.2d 226, 236 (Miss.1998). The evidence was sufficient on each element of the offense.
¶ 9. As to Roy's new trial request, we will set aside a jury's verdict and require a new trial only when there has been an "unconscionable injustice." Groseclose v. State, 440 So.2d 297, 300 (Miss.1983). A lesser standard would intrude on the responsibilities reserved for the jury. The guilty verdict returned by the jury was reasonable, and it withstands Roy's challenges.

2. Admissibility of "gruesome" photographs
¶ 10. Several photographs depicting Nguyen's exhumed body were offered into evidence by the prosecution. Roy claims that the photographs, particularly a close-up of the mud-covered body, were unduly prejudicial and inflammatory. Roy argues that the sole purpose of the photographs was to stir the jury's passions against him.
¶ 11. Admissibility of photographs as with other evidence is largely within the discretion of the lower court. Jones v. State, 776 So.2d 643, 652 (Miss.2000). Inflammatory photographs lacking evidentiary purpose are unquestionably prejudicial. Those having some probative value will not be barred merely because they are unpleasant. Id. Photographs have been held to possess evidentiary value when they "1) aid in describing the circumstances of the killing and the corpus delicti; 2) where they describe the location of the body and cause of death; 3) where they supplement or clarify witness testimony." Westbrook v. State, 658 So.2d 847, 849 (Miss.1995).
¶ 12. Roy challenged the photographs and argued that other less gruesome evidence existed for identifying Nguyen's body. The district attorney responded, "That's the method we chose. It goes directly to the corpus delicti." While Roy offered to stipulate to certain facts proven by the photographs, such willingness is not a bar to admissibility. Hughes v. State, 735 So.2d 238, 263 (Miss.1999). Each party, subject to judicial control, guides the presentation of its own case.
¶ 13. The final test for admissibility of relevant evidence is that its probative value not be substantially outweighed by its improperly prejudicial effect. M.R.E. 403. Here, the trial judge conducted a Rule 403 balancing on the record, finding that the photographs did possess probative value, and that such value outweighed any potential prejudice:
With respect to the gruesome nature of this photograph, ... I do not observe any wounds of any nature, or exposed body parts, or blood, or internal organs or such of a nature as to be highly prejudicial, and certainly not as prejudicial to outweigh its probative value.... This is not a gruesome photograph.... I find nothing of a legal nature that would prevent the question being asked, the photograph being displayed, and the identification made if possible.
We do not find that the lower court abused its discretion.
¶ 14. Roy further challenges the fact that the prosecution introduced the close-up photograph through Nguyen's girlfriend, claiming that it was done with the intent to arouse the passions and sympathies of the jury through a distraught witness. However, the State had previously attempted to introduce the photograph *88 through one of the police investigators involved in the case. Roy objected, and the lower court held that the witness was incompetent to use the photograph for identification purposes. Nguyen's girlfriend was a proper witness to identify the distinguishing tattoos depicted in the photograph.

3. Jury instruction
¶ 15. Roy alleges error in the denial of a jury instruction that he offered concerning the right to make a preemptive strike in self-defense when an attack is reasonably anticipated. Leverett v. State, 112 Miss. 394, 410, 73 So. 273, 276 (1916). He wished to advise the jury that an initial attack by Roy could be in self-defense. The court denied the instruction as "duplicitous and unnecessary."
¶ 16. Even though the basis for the trial judge's ruling was that the instruction was adequately covered by others, Roy has failed to designate for the record any jury instructions other than the two that were denied. An "appellant bears the burden of presenting a record which is sufficient to undergird his assignments of error." Williams v. State, 522 So.2d 201, 209 (Miss.1988). In the absence of the other instructions, there is nothing to rebut the presumption that rulings of the trial court are correct. Acker v. State, 797 So.2d 966, 971 (Miss.2001). We cannot examine the instructions that the jury received. Thus we cannot find error in the denial of one that the trial court found was comparable to others that were given.

4. Ineffective assistance of counsel
¶ 17. Roy submits that his counsel rendered constitutionally ineffective assistance. Examples of his attorneys' allegedly inadequate performance are failing to request a change of venue, failing to investigate, failing to call certain defense witnesses, and failing to retain a forensic expert to counter the opinions supplied by the State's pathology expert.
¶ 18. In reviewing a claim of ineffective assistance of counsel, we use a two part test. The defendant must demonstrate that his counsel's performance is deficient and that this deficiency prejudiced him such that he was denied a fair trial. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). An appellate court applies "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Burns v. State, 813 So.2d 668, 673 (Miss.2001).
¶ 19. Regarding a change of venue, Roy submits that many jurors had heard about these events, the facts "appear to have been common knowledge in the community," and some jurors "probably recognized the facts once they heard opening argument." Roy concludes that the failure of his attorneys to request a change of venue demonstrated constitutionally deficient performance. Roy's claims of the wide knowledge are unsubstantiated. Furthermore, the failure to move for a change of venue will be deemed trial strategy absent extreme circumstances. Faraga v. State, 514 So.2d 295, 307 (Miss.1987). Such circumstances do not appear in this case.
¶ 20. Similarly, the nature of counsel's investigation and the calling of witnesses are presumptively strategic decisions. Leatherwood v. State, 473 So.2d 964, 969-70 (Miss.1985). Roy makes blanket assertions that witnesses were available to testify to Nguyen's threats against him. He argues that "it is incumbent upon the defense to present those witnesses" *89 prepared to confirm facts testified to by the defendant. We certainly agree that counsel should energetically prepare the defense case, but "[d]ecisions regarding which witnesses to call are peculiarly within the gambit of trial strategy." King v. State, 679 So.2d 208, 211 (Miss.1996). We do not find a basis for reversal here.
¶ 21. Finally, Roy claims that he was entitled to an independent forensic pathology expert to advance his theory that Nguyen's death could have resulted from a single blow during his altercation with Roy. In addition, Roy claims that whether Nguyen was alive when the plastic bag was placed over his head was another question a defense expert could have properly addressed. While Roy has pointed to two instances in which such an expert might have been helpful, he has made no convincing argument that such testimony would have resulted in a different outcome at trial. Caston v. State, 823 So.2d 473, 509 (Miss.2002); Brown v. State, 798 So.2d 481, 506 (Miss.2001). We cannot say that the absence of a defense expert falls beyond the bounds of reasonable trial strategy.
¶ 22. We therefore presume effectiveness on the part of Roy's counsel.

5. Defendant's motion to dismiss counsel
¶ 23. In a related argument, Roy claims that the lower court erred in failing to rule on his request to dismiss counsel and appoint new counsel. A movant has the duty to pursue his motion through to hearing and decision. URCCC 2.04. Pre-trial motions not ruled upon by the time of trial are deemed abandoned. Id. Roy sent a handwritten letter addressed to the judge criticizing his counsel, and argues that "an unsophisticated defendant has no way of knowing that the Court did not address his written request." However, the rule applies equally to pro se defendants and those represented by counsel. Roy failed to pursue his request to replace his counsel.
¶ 24. Roy seeks creation of an exception to the waiver rule that would place responsibility upon the trial court for situations in which defendants charged with capital crimes receive inadequate counsel. He relies on a capital case in which the Supreme Court found reversible error because counsel did not provide any defense. The deficiencies included that counsel agreed with the defendant's decision to plead guilty on the morning of trial but the defendant remained subject to the death penalty; counsel challenged none of the prospective jurors who would decide whether the death penalty should be imposed, put on no case on sentencing, and did not cross-examine any witnesses. Stewart v. State, 229 So.2d 53, 54 (Miss.1969). This led the Supreme Court to state that "when the case has progressed to a point when it is apparent, or should be apparent, that the attorney for the defendant is either incompetent or is doing nothing to represent the interest of the defendant, the court should take such appropriate action" to address the matter. Id. at 56.
¶ 25. We agree that the trial court has a role to play when the ineffectiveness of counsel is apparent. But no abdication by counsel occurred here as in Stewart. Neither do we find a meaningful basis for charging counsel with any deficiency in his representation. "If counsel is reasonably effective in the defense of an accused, he meets constitutional standards, irrespective of the client's evaluation of his performance." Wheeler v. State, 536 So.2d 1347, 1354 (Miss.1988). Roy's counsel was effective.
¶ 26. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY *90 OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS HEREBY AFFIRMED. COSTS ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.